and Al, case number 241695. Good afternoon. Good afternoon, your honors. Thank you for giving me a chance to speak here. I am mostly going to rest on my opening brief, but I'm going to ask this court to direct its attention to the defendants and their attorneys' abject failure to provide discovery in a timely manner. This case is now 11 years old, the first time that they provided some very pertinent discovery, which included voice recordings between the main defendant and other police officers talking about how they were going to pinch, means arrest me for making one 911 call to report concerning events around law. That discovery was provided at the time that the defendants' attorneys filed their motion for summary judgment. I requested the court to reopen the discovery, and the court refused on the grounds that it would make no difference. The difference that I contend that it would have made is that I could have subpoenaed and interviewed or actually questioned the other police officer. Why did they decide with a one single 911 call to arrest me? 911 phone calls are at best, even if construed as being erroneous or made as a hoax, at best misdemeanor 10 years prior to the time that this event took place. The second part I'm going to ask this court to turn its attention to is the fact that there was a letter produced by defendants' attorneys which implicates the Connecticut State Attorney's Office in participating in the cover-up of this matter. That letter was produced with a motion to dismiss with prejudice my complaints. That was the first time that letter was produced. The state attorneys implicated are Richard Colangelo and Paul Forensic. Had I ever known of that letter, had the defendants' attorneys produced that letter in a timely manner like they were required to, I would have subpoenaed them and subject them to questioning about what they knew. Your Honors, the third part of this should really concern this court. Your Honors, may I reclaim some of my time? Because I see I'm kind of running out of time. You've reserved three minutes for rebuttal. May I reclaim one minute? Because I just want to do the last part. You can use your minute, yeah. On the second day of trial, this matter actually went to trial. On the second day of trial at around 8.15, I was sideswiped by a car that had been following me from where I live in Connecticut to a location close to the court, Meriden. The person did not stop. A state police trooper came up, showed up. I was transported by ambulance to the hospital. There were firemen who showed up who placed a neck collar on my neck. I underwent CAT scans. The court was aware that I was in the hospital because the courtroom deputy called the hospital multiple times inquiring about my presence there. The state trooper then instructed the nurse that I was faking it, and they discharged me because I was truly not faking it, and it turns out on MRAs, I had a vertebral artery dissection as a result of that accident. I was transported to New York Presbyterian Hospital where I ended up undergoing multiple MRIs and MRAs of the head and neck. The court was aware that I was at New York Presbyterian Hospital as well because the courtroom deputy, I called and informed them that I was there, and the courtroom deputy called and questioned the ER physician in charge about my presence there while I was undergoing CAT scans. While I was in the hospital, the court decided upon the prompting of the attorneys, the defendant's attorneys, to dismiss the case with prejudice. When you compare the record where the defendant's attorneys were given a year off from prosecuting or from defending this matter for the birth of a child, for personal vacations, you compare and contrast. You have reserved some time for rebuttal. Thank you. We'll hear from the other side. I appreciate it. Good afternoon, Your Honors. May it please the Court, my name is Andrew Glass. I represent the Town of Wilton, Robert Cipolla, Robert Smaldone, and Michael Tyler in this matter. Each of the appealed decisions here from our district court judge, Michael Shea, were well-reasoned and, in the instance of the sanctions order, showed careful analysis and consideration of the five factors in Baptiste. As to the discussion Just a point of clarification, is the Town of Wilton an appellee here, or is it just a defendant? It's a defendant, but to the extent that the plaintiff references in her opening brief that the district court erred in granting a motion to dismiss, as to the Town of Wilton on a Monell claim, we made sure to address that in our brief just because of the solicitude generally paid to pro se parties. Okay. Additionally, with respect to the discovery issues, those were not properly before the district court, and that's set forth in both the initial discovery order and the rulings on the motion for reconsideration that the plaintiff added to her special appendix. Additionally, even reading those, despite the fact that those discovery issues were not properly raised before the district court, the plaintiff was also provided a roadmap by Judge Shea in the initial discovery order as to how to seek consideration and how to properly raise those issues. She did not. The defendants complied with all their discovery obligations. The rulings were well-reasoned. And most importantly, my clients are entitled to finality in this matter. Plaintiff's pattern of bringing the trial to the eve of trial and finding a way to avoid trial, whether it be through illness or this more Wait a minute. The first time, she didn't ask to postpone the trial. The court, upon realizing that she had COVID, made the decision. Made the decision. Is she culpable for having gotten COVID? Well, in that specific instance, the culpability came from the fact that the plaintiff did not advise both the court and counsel of her COVID diagnosis. And I think that the sanctions order that was entered in that instance, even though we had initially requested dismissal sanctions, the court went through the five factors and made a decision. Yes, but what authority was the court relying on for that sanctions order? Was it predicated on its inherent authority or some other basis? And 41B as well. It's inherent authority under Rule 41B to enter sanctions for failure to comply with court orders. What was the court order that she didn't comply with? Sure. We had appeared for a status conference about a week and a half prior, and this is set forth in that initial sanctions order where the judge ordered the party and ordered Ms. Powell to advise the court if there was any changes in her health because she had advised that she had recently tested positive for COVID and she failed to report to the court. And at that time, there was also the special orders in effect at the court where parties who either had symptoms or who had tested positive for COVID were not even allowed in the courtroom. Those special orders were still in place at that time. Did the court make a finding of bad faith in connection with those sanctions? The court made a finding specifically that the plaintiff knew of her obligation to provide the court information regarding the COVID diagnosis and failed to do so. So I would say yes. So you're interpreting that as a bad faith finding? That the plaintiff was aware of that obligation, that she failed to comply with that obligation, that the orders of the court, both the special orders and the orders that were entered at the pretrial conference just prior were violated by the plaintiff knowingly at that time. And I don't think that the well-reasoned order by Judge Shea on that constitutes an abuse of discretion. Same for after the trial in May of 2024. And I see my time's expired, so unless there's further questions, I'll defer to partner counsel in our briefing. Thank you very much. Thank you. Good afternoon, judges. My name is Patrick Mullins. I represent Mr. Jaynes and Mr. Moynihan. I will be extremely brief, Your Honor. I believe that Judge Shea's decisions on all of these motions that ends up bringing us in front of you today were well-reasoned. I believe Judge Shea showed extreme patience with regards to this case up until the final dismissal. He looked at all of plaintiff's motions to reconsider. That is a pretty big sanction to dismiss a case. I agree, Your Honor. I agree with that. But I think if you take into account that the first time when we were actually in court to begin jury selection and the plaintiff had not informed the court that she had tested positive for COVID, all of the defense was present and including some people who had flown from across the country, and there was a jury panel there as well who had its time wasted, time, money wasted as well. And with the second ultimate, what ended up being the dismissal, we began the trial, Your Honor. We picked the jury. We had the first day of evidence. There were multiple orders from Judge Shea to Dr. Powell to be present the following day, and then the following day on top of that. He was not impressed with the medical records that he was provided regarding the same. Even the car accident explanation, there were different explanations on how that happened, and a witness to it who said that her vehicle wasn't hit at all. But I think Judge Shea literally gave as much possible leeway to Dr. Powell, I think at least in part because she's pro se, and he really did go above and beyond. I was not going to lie. I was upset that he went as far as he did. And I think, Your Honor, that if you take a look at Judge Shea's decisions, they're very well-reasoned, and they go over all of the different factors involved here, and I think his position should be supported, Your Honor. Thank you very much, Dr. Powell.  So you've got two minutes. Thank you, Your Honor. Your Honor, to address the first issue that Andrew Glass brought up, the COVID issue, there was a pretrial hearing. At that pretrial hearing and prior to it, I informed the court. Actually, forgive me, Your Honors. The court ordered that in person we were required to submit to the court the exhibits for the trial. Prior to that entering the court, a day prior, I believe it was maybe two days prior, I informed the court that I had tested positive for COVID. This was literally eight days before the trial. I showed up. No one objected. Amy Constantine, the law clerk, was there. I was coughing. They knew that I had tested positive for COVID. Based on that assumption that the court was not going to reschedule the trial, I showed up for trial. I thought that prior hearing was by videoconference. I must have misremembered the record. Your Honor, this was appearance to produce a box of trial exhibits, which I actually dragged on a trolley to the court and produced them in person to the court. Everyone was present. They knew I was positive for COVID. This was literally eight days prior to the trial. So the court very well knew that eight days prior to the trial, I was positive for COVID. I retested again, tested negative. Retested again, tested positive. On the morning of, I tested negative. In retrospect, Your Honor, COVID turned out to be—it's difficult even to say what it turned out to be. I believe that the court was— I'm going to give you 30 more seconds. Thank you, Your Honor. The second part I would like to address is the witness that Mr. Mullins has mentioned was an off-duty police officer. He is the guy who swerved into my car. He rounded back, looped back, and showed up at the scene of the accident about 15 to 20 minutes later and interacted with the police officers on the scene. There is video recordings because one of the police officers was wearing it, wearing a body-worn camera. The state of Connecticut has refused to produce those video recordings. I recognize that off-duty police officer. He is the one who caused the accident.  And he is an employee of the Wilton Police Department, I believe. Thank you. Thank you very, very much. We'll reserve the decision, as I think you know, Dr. Bell, certainly the attorneys know. We will have a decision in due course in writing.